MARÍA DEL CARMEN NIGAGLIONI MIGNUCCI, demandante y peticionaria, *v.* DEPARTAMENTO DE SALUD y ADMINISTRACIÓN DE FACILIDADES Y SERVICIOS DE SALUD, demandadas y recurridas.

*Número:* CC-1997-328          *Resuelto:* 22 de septiembre de 1999

*Rubén T. Nigaglioni*, de *McConnell Valdés*, abogado de la parte peticionaria; *Milagros Sandoval Benítez*, de *Méndez Méndez & Quijano Borges*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Tenemos la oportunidad de resolver si al implantar un nuevo plan de clasificación y retribución un empleado gubernamental tiene derecho a que se le reconozcan los pasos por mérito adquiridos bajo la estructura retributiva suplantada. Examinada la Ley de Retribución Uniforme (Ley de Retribución), Ley Núm. 89 de 12 de julio de 1979 (3 L.P.R.A. sec. 760 *et seq.*), y el Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal, Reglamento Núm. 3109 de 7 de junio de 1984 (Reglamento de Retribución Uniforme), así como los principios subyacentes en los planes de clasificación y retribución de las agencias gubernamentales, resolvemos que al implantar un nuevo plan de clasificación y retribución los empleados públicos sólo tienen derecho a que se les reconozca la remuneración que acarrean los pasos por mérito adquiridos y no a determinada adscripción en los niveles intermedios de una escala de retribución.

I

El 1ro de julio de 1996 la Administración de Facilidades de Servicios de Salud (A.Fᴀ.S.S.), como administrador individual en asuntos de personal, implantó su primer Plan de Clasificación y Retribución para los empleados de carrera que laboran en esa entidad con el aval de la Oficina Central de Administración de Personal (O.C.A.P.). Como parte del nuevo plan, la A.Fᴀ.S.S. determinó que cada empleado recibiría "un aumento de sueldo mínimo de $70 o $50 mensuales, sobre el sueldo que devengaba el empleado al 30 de junio de 1995 o al 30 de junio de 1996", respectivamente. (Énfasis en el original suprimido.) Alegato, *Exhibit* II, pág. 16.([1]) El sueldo resultante sería ajustado en la nueva escala de retribución adoptada.

Previo a la implantación del nuevo plan, la Sra. María del Carmen Nigaglioni Mignucci estaba ubicada en la clase

---

([1]) Las normas adoptadas por la Administración de Facilidades de Servicios de Salud (A.Fᴀ.S.S.) consideraron lo siguiente:

"1. Al implantarse las nuevas escalas de sueldo se le concederá a los empleados activos de carrera (regular o probatorio) y transitorios un aumento de sueldo mínimo de $70 o $50 mensuales, sobre el sueldo que devenga[ba el empleado] al 30 de junio de 1995 o al 30 de junio de 1996. Como norma general este aumento conllevará ajuste de sueldo a escalas de retribución. El ajuste que se efectúe en los sueldos de los empleados, como resultado de la implantación de las escalas, deberá reflejar en todos los casos un aumento de sueldo no menor de $70.00 mensuales (en las estructuras establecidas el 1 de julio de 1995) y de $50.00 mensuales (en las estructuras establecidas al 1 de julio de 1996).

"2. Los sueldos de los empleados una vez concedido el aumento deberán coincidir con alguno de los tipos retributivos o pasos de la escala a implantarse, a la cual esté asignada la clase del puesto que ocupan. Si no coincidiesen, éstos se ajustarán al próximo tipo superior inmediato en la nueva escala de retribución, independientemente del número de pasos que representaba el sueldo que deveng[a] el empleado en la escala saliente; excepto en aquellos casos que al otorgarse el aumento, el sueldo del empleado sobrepase el máximo de sueldo de la escala extendida.

"3. Cuando los sueldos de los empleados sean inferiores al tipo mínimo de las escalas a implantarse, se procederá a concederle el aumento de $70.00 (en la norma aplicable a las estructuras del 1 de julio de 1995) o [de] $50.00 (en las normas aplicables a las estructuras del 1 de julio de 1996) mensuales y luego su sueldo se ajustará al básico de la clase o al tipo retributivo que sea inmediatamente superior a su sueldo en la nueva escala, independientemente del número de pasos que representaba el sueldo que devengaba el empleado en la escala saliente ...." (Énfasis suprimido.) Solicitud de *certiorari*, Apéndice II, *Exhibit* 6, págs. 76–77.

de puesto de Especialista en Nutrición y Dietética IV, escala de retribución número 32, tipo intermedio 6. Recibía una remuneración mensual de $1,610. Había ascendido en la escala retributiva al tipo intermedio 6 por razón de varios pasos por mérito que le fueron reconocidos a lo largo de sus años de servicio.[2]

Según el nuevo esquema salarial, la clase de puesto ocupada por Nigaglioni Mignucci permaneció en la escala 32. Esta escala, a su vez, retuvo la misma cantidad de tipos intermedios. Sin embargo, los sueldos devengados tanto en el tipo mínimo como en los intermedios fueron aumentados. Ahora en la nueva escala el tipo mínimo tiene una remuneración mensual de $1,741, cantidad que se aumenta a lo largo de los tipos intermedios hasta llegar a un tipo máximo de $2,322 mensuales.

Conforme a las normas adoptadas para el nuevo plan, la A.FA.S.S. sumó la cantidad de $70 al salario previamente devengado por Nigaglioni Mignucci. Ello arrojó un resultado de $1,680. Esta cantidad, a su vez, fue ajustada al tipo correspondiente, que en el caso de Nigaglioni Mignucci era el tipo mínimo de la escala 32, que en el nuevo plan era de $1,741. Este ajuste representó para la señora Nigaglioni Mignucci un aumento de $131 en su salario mensual.

Inconforme con la remuneración que le fue asignada, Nigaglioni Mignucci acudió ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.). Alegó que su ubicación en el tipo mínimo de la escala 32 bajo el nuevo plan fue

totalmente injustificada y represent[ó] una privación de [sus]

---

[2] Conforme surge de los autos del caso, los pasos por mérito le fueron concedidos de la forma siguiente: dos (2) en 1984; dos (2) en 1987 y dos (2) en 1992. La señora Nigaglionni Mignucci también recibió cuatro (4) pasos por retención en 1989. Sin embargo, según la Sec. 4.8(11) del Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal, Reglamento Núm. 3109 de 7 de junio de 1984 (Reglamento de Retribución Uniforme), esta compensación adicional no forma parte del sueldo de un empleado, asunto que en el caso de autos no está en controversia. Véanse: *Villamil Suárez v. D.T.O.P.*, 133 D.P.R. 805 (1993); *Ortiz Ortiz v. Depto. de Hacienda*, 120 D.P.R. 216 (1987).

derechos adquiridos sin que mediase el debido proceso de ley. (Énfasis suprimido.) Solicitud de *certiorari*, Apéndice II, *Exhibit* 1, pág. 33.

Adujo, además, que con esta acción se le privó de los "adelantos por mérito relativos a los años de servicio". Íd., pág. 34.

Luego de examinar las alegaciones de las partes, J.A.S.A.P. declaró no ha lugar la apelación interpuesta por Nigaglioni Mignucci. Ésta presentó, oportunamente, un recurso de revisión ante el Tribunal de Circuito de Apelaciones, el cual confirmó la decisión de J.A.S.A.P. Ante nos, Nigaglioni Mignucci plantea como único señalamiento de error que dicho foro incidió al confirmar la determinación de J.A.S.A.P., pues la misma "es contraria a derecho y [la] privó [...] de su derecho de propiedad". Petición de *certiorari*, pág. 4. Sostiene que

... fue degradada del tipo intermedio seis (6) de la escala de retribución de su puesto al tipo mínimo en dicha escala mediante el simple sofismo [sic] de aumentar la cuantía de retribución correspondiente a su puesto. (Énfasis suprimido.) Íd., pág. 7.

Añade que

... después de dedicarle en exceso de 24 años al servicio público y después de ascender en la escala de retribución de su puesto por méritos al tipo 6, ... se encuentra ... en una situación similar a aquel recién llegado al puesto y que no ha demostrado mérito alguno en el desempeño de sus funciones. Íd.

Finalmente, plantea que en su caso es de aplicación la Sec. 4.8 del Reglamento de Retribución Uniforme, que prescribe la norma que debe seguirse cuando ocurre una reasignación de una clase de puesto a una escala salarial, en lugar de la Sec. 4.7, que regula las asignaciones de las clases de puestos a las escalas salariales. Examinemos inicialmente este planteamiento.

## II

 En *Guzmán v. Depto. de Hacienda*, 147 D.P.R. 46, 56 (1998), resolvimos que la Sec. 4.7 del Reglamento de Retribución Uniforme[3]

... resulta aplicable a la determinación original que hace una entidad con relación a la ubicación de determinadas clases de puestos a las escalas de sueldo. Se trata, así, de la determinación de las escalas retributivas que corresponderán a determinadas clases de puestos en la implantación *original* de un plan de clasificación o retribución. (Énfasis suplido.)

Afirmamos, además, que la Sec. 4.8, cuya aplicabilidad reclama Nigaglioni Mignucci, resulta aplicable "cuando, luego de la asignación original, a las clases de puestos se les asigna escalas de retribución distintas ...". Íd.

En este contexto, la Sec. 4.8(6) del Reglamento de

---

[3] La Sec. 4.7 del Reglamento de Retribución Uniforme, *supra*, pág. 9, dispone:

*"Sección 4.7-Asignación de las Clases de Puestos a las Escalas de Sueldos*

"1. Con arreglo a las escalas de sueldos, la [O.C.A.P.] establecerá y mantendrá al día la posición relativa de las clases de puestos de los planes de clasificación para los servicios de carrera y de confianza para la Administración Central, mediante la asignación de cada clase a una escala de sueldo.

"2. A su vez, cada Administrador Individual asignará las clases de puestos de ambos servicios a las escalas de sueldos correspondientes; y someterá éstas al Director de O[.]C[.]A[.]P[.] para estudio y aprobación final.

"3. La asignación de las clases de puestos a las escalas salariales se guiará por el objetivo de proveer equidad en la fijación de sueldos.

"4. Las reasignaciones subsiguientes que fueren necesarias se regirán por lo dispuesto en la Sección 4.8(6) de este Reglamento."

Por su parte, la Sec. 4.8(6) del citado reglamento, pág. 12, se refiere a los casos de reasignaciones, y establece lo siguiente:

*"6. Reasignaciones de Clases a Escalas de Sueldos Superiores*

"Cuando se enmiende el Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior, se concederá a los empleados afectados un aumento en sueldo que será igual al incremento que reciba la clase a la fecha de efectividad de dicha acción. Los sueldos se ajustarán al tipo inmediato superior, cuando no coincidan con uno de los tipos retributivos de la escala correspondiente. Si el sueldo resultante excede del máximo de la escala, se procederá conforme a la disposición relativa a extensión de las escalas.

"El Director, en el caso de la Administración Central y cada Autoridad Nominadora, en el caso de los Administradores Individuales, podrán autorizar otros mecanismos para ajustar los sueldos, en caso de limitación presupuestaria."

Retibución Uniforme establece la fórmula mediante la cual se calculará el salario de los empleados afectados por una enmienda al plan de retribución. Su aplicabilidad, conforme al texto reglamentario, está condicionada a que ocurra una *"enmiend[a] al Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior ..."*. (Énfasis suplido.) Regla 4.8(6), *supra*, pág. 12. Como puede apreciarse, el supuesto que configura la "enmiend[a] al [p]lan de [r]etribución" que hace aplicable la sección es que se ubique a una clase o serie de clases en una escala superior. En tal caso, la operación administrativa consiste en mover a una clasificación o grupos de clasificaciones de puestos a una escala más alta. Nótese que en tal caso, el plan de retribución no sufre necesariamente cambios en cuanto al salario considerado en cada escala. Lo que ocurre en tal caso es un movimiento vertical de una serie de puestos sin alterar la cuantía dispuesta en cada escala. Por otro lado, si se alterara la totalidad del plan de retribución por efecto de que se aumenta la remuneración que acarrea cada escala, nos encontraríamos ante la implantación de un nuevo plan de retribución que hace aplicable la citada Sec. 4.7.

En el caso de autos, no nos encontramos ante enmiendas al plan de retribución previo por efecto de reasignaciones de una clase o serie de clases a una escala de retribución superior. A.Fa.S.S. no modificó el plan retributivo existente conforme a lo dispuesto en la citada Sec. 4.8 del Reglamento de Retribución Uniforme. Hizo cambios a la totalidad del plan retributivo al aumentar la retribución correspondiente a cada clase. Nos encontramos, por lo tanto, ante la implantación de un nuevo plan de retribución aplicable a todos los empleados de la agencia que sustituye el esquema hasta entonces vigente. Ello es así, aun cuando el nuevo plan conservó el mismo número de niveles intermedios que contenía el plan suplantado y que la cla-

sificación de los puestos permaneció inalterada.([4]) Se trata, así, del supuesto considerado en la Sec. 4.7 del Reglamento de Retribución Uniforme, *supra*, que regula las asignaciones de los puestos a las nuevas escalas salariales y que, a su vez, excluye la aplicación de la Sec. 4.8 del citado reglamento. Nigaglioni Mignucci no tiene razón al afirmar lo contrario.

Aclarado lo anterior, examinemos los méritos de sus demás señalamientos.

## III

■ No hay duda de que en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución. 3 L.P.R.A. sec. 760a. Véase *Guzmán v. Depto. de Hacienda*, supra. Esta política pública, a su vez, se enmarca en "el derecho de todo trabajador ... a recibir igual paga por igual trabajo", que consagra la Constitución del Estado Libre Asociado de Puerto Rico. Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 352.

■ Con el fin de ejecutar esa política pública, la Asamblea Legislativa aprobó la Ley de Retribución, la cual, en parte, "delimita la responsabilidad de los administradores individuales al elaborar sus propios planes de retribución". *Guzmán v. Depto. de Hacienda*, supra, pág. 7. Al respecto, impone a la administración central y a los administradores individuales la obligación de adoptar planes de retribución tomando en consideración los factores siguientes:

> ... niveles de responsabilidad y complejidad de las funciones, cualificaciones necesarias para el desempeño de las mismas;

---

([4]) Los planes de clasificación y los planes de retribución son cosas distintas. Por ello, de ordinario, puede ser modificada de forma independiente.

dificultades existentes en el reclutamiento y retención de personal en las diferentes clases de puestos; condiciones de trabajo; oportunidades de ascenso existentes dentro de los planes de clasificación; sueldos prevalecientes en diferentes sectores de la economía; aspectos relativos a los costos de vida, y [las] posibilidades fiscales. 3 L.P.R.A. sec. 760a. Véase, además, Sec. 4.6(2) del Reglamento de Retribución Uniforme, *supra*, pág. 6.

En conformidad con la Ley de Retribución, la O.C.A.P. promulgó el Reglamento de Retribución Uniforme. Este reglamento complementa el esquema jurídico que sirve de fundamento a la implantación de un plan de retribución que lleva a cabo una agencia pues, entre otras cosas, establece las normas básicas que guiarán a los administradores individuales al adoptar los planes de retribución.

Ni la Ley de Retribución ni el Reglamento de Retribución Uniforme imponen a los administradores individuales la obligación de reconocer a los empleados un derecho a estar ubicados en el mismo tipo intermedio que tenían antes de la implantación de un nuevo plan de clasificación o retribución. Es decir, no existe mandato estatutario o reglamentario alguno de donde se derive un derecho propietario de los empleados a los tipos intermedios que ostentan bajo una estructura retributiva cuando se establece un nuevo plan.

La Ley de Retribución tan sólo dispone que cuando se adopte una nueva estructura salarial, los sueldos de los empleados serán ajustados de la forma siguiente:

El que está bajo el mínimo irá al nuevo tipo mínimo. El salario de aquellos empleados que devenguen sueldos superiores al tipo mínimo de la escala por motivo de haber recibido aumentos de sueldo durante la vigencia de la anterior estructura, *se ajustará de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada.* (Énfasis suplido.) 3 L.P.R.A. sec. 760e(c)(10).

Esta disposición estatutaria no obliga a los admi-

nistradores individuales a conceder aumentos de sueldo a los empleados cuando adoptan nuevos planes de retribución. A lo que viene obligado el administrador individual es a aumentar el sueldo de un empleado cuando ello es necesario para ubicarlo en el tipo mínimo de su escala bajo el nuevo plan.

Por otro lado, esta disposición tampoco obliga a los administradores individuales a reconocer los pasos por mérito concedidos bajo la estructura salarial derogada. Sólo los obliga a reconocer "los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada". 3 L.P.R.A. sec. 760e(10). Dicho de otro modo, sólo impone a las agencias que operan como administradores individuales en asuntos de personal, y a la administración central en los demás casos, la obligación de no privar a los empleados de los *aumentos* recibidos a lo largo de los años de servicio, de forma tal que no se le reduzca el *salario* que recibían bajo el plan de retribuciones sustituido. La A.FA.S.S. cumplió con esta obligación en el caso de Nigaglioni Mignucci.

Conforme a las normas adoptadas y aprobadas por el Director de la O.C.A.P., la A.FA.S.S. estableció unos tipos mínimos y máximos de remuneración. Determinó que cada empleado recibiría un aumento mínimo de $70 con relación a la escala retributiva existente al 1ro de julio de 1995. Si al hacer ese cálculo resultaba que el salario era menor al tipo mínimo de la escala de retribución, conforme a la Ley de Retribución y las normas adoptadas, el salario del empleado sería aumentado hasta ese tipo mínimo.

El nuevo salario asignado a Nigaglioni Mignucci no menoscabó los aumentos previos que había recibido por concepto de los pasos por mérito. De hecho, su salario bajo el nuevo plan de retribución fue aún mayor que el que ostentaba bajo el plan previo en donde estaba ubicada en el nivel intermedio número 6 de su escala retributiva. La determinación de su salario tampoco fue discriminatoria, pues éste fue computado de forma consecuente con las normas

elaboradas y aplicadas uniformemente a los demás empleados en situación análoga. Su alegación principal, sin embargo, parece centrarse en que bajo el nuevo plan de retribución se conservaron los mismos tipos intermedios en su escala, por lo que, a su juicio, debe reconocérsele el derecho a ser ubicada en el mismo tipo intermedio que se encontraba en el plan suplantado. Examinemos este planteamiento.

## IV

Los tipos o niveles intermedios en las escalas son factores distintivos que tienen el objetivo de aumentar la remuneración de un empleado de acuerdo con la labor rendida. Sec. 5.14 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1354(3)); *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991). Véase, además, *Aponte v. Srio. de Hacienda*, E.L.A., 125 D.P.R. 610 (1990). Sin embargo, *lo que constituye un derecho propietario del empleado es el salario conferido, no su adscripción a un tipo intermedio dentro de una escala de retribución.*

Todo empleado que a lo largo de su desempeño dentro de una entidad haya sido ubicado progresivamente dentro los tipos intermedios de una escala retributiva tiene derecho a que bajo un nuevo plan de retribución se le confiera, al menos, un salario igual al que recibía bajo el plan previo, no uno menor. De este modo, el ordenamiento jurídico confiere protección a la remuneración económica conferida al empleado por concepto del paso, no a determinada ubicación en los tipos intermedios de la escala de retribución, que en términos jurídicos carece *per se* de contenido patrimonial.

Es incorrecto, en consecuencia, afirmar que ubicar a un empleado en el tipo mínimo de una nueva escala retributiva constituye una "privación de pasos", o que tal acción

constituye una privación de un derecho propietario. El "paso por mérito" no es a lo que el empleado tiene derecho, sino a la remuneración que acarrea el mismo.

■ Es correcta, por lo tanto, la afirmación de A.Fᴀ.S.S. en términos de que un empleado sería privado de un derecho propietario por efecto de la implantación de un nuevo plan de clasificación y retribución sólo si tiene una pérdida en el salario que recibe. Sobre este aspecto nos señala, con acierto, que

"[e]n el contexto que nos ocupa, la ausencia de una ganancia mayor no significa tener pérdida; el término pérdida implica la salida del patrimonio económico individual de un interés legítimo que formaba parte de éste, conlleva necesariamente una reducción del patrimonio económico real existente". Alegato, pág. 7.

En su recurso de *certiorari* la peticionaria reconoce implícitamente lo anterior, toda vez que acepta que si bajo el nuevo plan de retribución de la A.Fᴀ.S.S. no existiesen tipos intermedios de retribución en la escala a la cual pertenece su puesto, entonces sería válida su ubicación en el tipo básico de la escala, lo que sin duda la colocaría en la misma condición —en términos de remuneración— que cualquier otro empleado, incluso aquellos que bajo el plan previo hubiesen estado ubicados en un tipo intermedio menor al de ella. En este sentido afirma:

No albergamos dudas de que al establecer un plan de retribución un Administrador Individual no tiene una obligación de establecer una escala tal y como ésta existía previamente. Es su prerrogativa, dentro de los supuestos de Ley y Reglamento, establecer nuevos parámetros en la nueva escala de retribución que adopte. Inclusive, podría darse el caso que en la nueva clasificación de un puesto, el Administrador decida consolidar, reducir o aumentar los tipos de remuneración intermedia. Solicitud de *certiorari*, pág. 6.

■ El reconocimiento de que es prerrogativa de un administrador individual eliminar niveles intermedios

está fundamentado en una admisión implícita de que no existe un derecho del empleado a estar ubicado en determinado tipo o nivel intermedio. Coincidimos con esa apreciación que dimana de una visión integral del ordenamiento jurídico que rige en materia de retribución en Puerto Rico. De haber sido la intención del legislador que al implantar un nuevo plan de retribución se ubicase a los empleados en los mismos tipos intermedios que ocupaban en los planes de retribución suplantados, hubiese incorporado en la Ley de Retribución una disposición expresa al respecto. No lo hizo.

De este modo confirió flexibilidad a los administradores individuales para elaborar los planes de clasificación y retribución autónomos extendiendo, reduciendo o consolidando los niveles intermedios de una escala de retribución de acuerdo con sus necesidades y posibilidades fiscales. El interés patrimonial del empleado queda debidamente salvaguardado al garantizarle que su salario no será menoscabado. Ese es el claro mandato de la Ley de Retribución en aquella parte que exige que los nuevos planes de retribución garantizarán los aumentos de sueldo recibidos durante la vigencia de la estructura salarial previa. La A.Fa.S.S. cumplió con esta obligación.

V

Por último, hay razones prácticas y de sana administración pública que también militan en contra de la pretensión de Nigaglioni Mignucci.

Tanto la Ley de Retribución como el Reglamento de Retribución Uniforme de la O.C.A.P. imponen a las agencias que operan como administradores individuales en asuntos de personal y a la administración central la obligación de elaborar sus planes de clasificación y retribución tomando en consideración sus posibilidades fiscales. 3 L.P.R.A. sec. 760a; Sec. 4.6(2) y (3) del Reglamento de Re-

tribución Uniforme, *supra*, pág. 6. Acoger la posición de la peticionaria implicaría imponer a las agencias y al Gobierno una carga económica significativa que haría poco viable la implantación de un nuevo plan de retribución. Su efecto sería obligar a las agencias a destinar recursos de forma irrazonable al pago de los aumentos salariales que representaría ubicar a los empleados en el mismo tipo intermedio en que se encontraban previamente. Ello constituiría un disuasivo a cualquier pretensión de implantar un nuevo plan de retribución.

█   Asimismo, existen claras disposiciones reglamentarias que establecen normas básicas que deben ser satisfechas al momento de elaborar un plan de clasificación y retribución, y cuya aplicabilidad cobra particular significado en el caso de autos. En este contexto, dispone el Reglamento de Retribución Uniforme:

> *Conforme* [a] *la disponibilidad de recursos fiscales,* las estructuras de sueldo deben ser lo suficientemente competitivas de manera que permita reclutar y retener personal capacitado; deben proveer para el justo reconocimiento de la eficiencia y productividad individual de los empleados; y de igual modo deberán estar estructuradas de forma tal que provean oportunidades de progreso en el servicio público. (Énfasis suplido.) Sec. 4.6(3) del Reglamento de Retribución Uniforme, *supra*, pág. 6.

En conformidad con esta disposición reglamentaria, los planes de clasificación y retribución se revisan no sólo para conferirle a los empleados una remuneración más justa y a tono con las nuevas realidades económicas imperantes en la sociedad, sino también para dotar de cierta agilidad a las entidades gubernamentales en el reclutamiento de nuevo personal y al momento de premiar la labor que rinden los empleados.

No es posible que una agencia logre atraer al personal mejor capacitado en un mercado competitivo si no revisa periódicamente sus escalas salariales para hacerlas más atractivas. De hecho, conforme a lo expuesto, surge de los

autos que entre los objetivos de la A.Fᴀ.S.S. al implantar su nuevo plan de retribución se encuentra precisamente

> [c]rear una estructura salarial competitiva con el mercado actual, con el fin de *reclutar y retener* los servicios profesionales de la salud que necesita la Agencia para la prestación de servicios de salud a [los] ciudadanos. (Énfasis suplido.) Solicitud de *certiorari*, Apéndice II, *Exhibit* 1, pág. 36.

Ese objetivo, inherente a una revisión de un plan de retribución, se logra aumentando los tipos básicos de los planes retributivos y permitiendo que los empleados continúen ascendiendo por sus méritos a través de niveles intermedios.

El aumento en los tipos básicos de una estructura salarial evita que las agencias recurran de forma desmedida a la concesión de diferenciales (como pasos por reclutamiento) para poder atraer personal altamente capacitado. Por su parte, la posibilidad de que los empleados puedan continuar ascendiendo a través de tipos intermedios constituye un incentivo para retener empleados en las agencias que a lo largo de sus años de servicio han agotado los tipos o niveles intermedios dentro de sus respectivas escalas de retribución. Así, por ejemplo, un empleado que por sus ejecutorias haya sido ubicado progresivamente en el tipo intermedio número 8 en una escala de retribución que cuenta con diez (10) tipos o niveles intermedios, sólo cuenta con dos (2) pasos por mérito adicionales por escalar. Una vez alcanza el tipo máximo, sus posibilidades de seguir ubicado progresivamente en la escala de retribución y, por lo tanto, de lograr un salario mayor por concepto de sus méritos como empleado, se extinguen. Con la implantación de un nuevo plan de retribución, los administradores individuales logran que sus escalas retributivas preserven la agilidad necesaria para poder retribuir adecuadamente a los empleados por sus méritos. Así, desde la perspectiva de los empleados, la revisión de las escalas salariales les permite seguir aumentando su retribución en atención a sus

méritos como empleado y a sus años por servicios prestados.

En resumen, resolver que al establecer un nuevo plan de retribución los administradores individuales deben ubicar a los empleados en los mismos tipos intermedios que se encontraban previamente sería contrario a la agilidad y flexibilidad con que deben contar las agencias que operan como administradores individuales en asuntos de personal. Sería contrario, además, al objetivo de lograr escalas retributivas más atractivas, debido a que las agencias tendrían que destinar mayores recursos fiscales al pago de la remuneración por concepto del pago de pasos por mérito concedidos, en menoscabo de la posibilidad de aumentar significativamente los tipos mínimos de una escala retributiva. Por lo anterior, y en ausencia de un fundamento de derecho que sostenga la alegación de Nigaglioni Mignucci, *procede confirmar la decisión recurrida*.

*Se emitirá la correspondiente sentencia.*

El Juez Asociado Señor Fuster Berlingeri disintió con una opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Una mayoría del Tribunal hoy resuelve, en efecto, que cuando una agencia gubernamental establece una *nueva escala salarial* para sus empleados, no viene obligada a observar un criterio de paridad o de proporcionalidad respecto a los aumentos otorgados, y que los aumentos por mérito obtenidos antes por algunos empleados de la agencia quedan reconocidos en la nueva escala con *cualquier aumento que éstos reciban*, aunque sean *sustancialmente*

*inferiores* a los que se le otorguen a los otros empleados que no habían logrado aumentos por méritos antes.

Disiento de este dictamen por considerarlo injusto y contrario a derecho, y porque constituye un retroceso en la larga trayectoria de la administración pública de Puerto Rico en su afán de proveerle a los empleados gubernamentales una retribución fundada en los méritos de su servicio. Veamos.

## I

Antes que todo, debe tenerse claramente en cuenta lo que está ante nos. La opinión de la mayoría formula el asunto de un modo acomodaticio, que se presta para racionalizar su dictamen. Por ello es necesario aclarar de entrada qué es exactamente lo que está ante nuestra consideración.

En el caso de autos, la Administración de Facilidades de Servicios de Salud (en adelante A.Fa.S.S.) formuló un nuevo plan de retribución para sus empleados *que era idéntico al suplantado, excepto por los aumentos salariales que introducía el nuevo plan.* El plan aludido no estaba basado en una nueva clasificación de los puestos de la agencia. El cambio real que introducía sólo era de una escala salarial a otra escala de retribución superior.

La nueva escala salarial aludida tenía un *sueldo mínimo, un sueldo máximo y siete sueldos intermedios, por lo que era exactamente igual que la escala anterior*, excepto por el monto de los salarios. En la nueva escala, el sueldo mínimo constituía un aumento de *$431* sobre el mínimo anterior. El sueldo máximo constituía un aumento de *$567* sobre el máximo anterior. Al salario que aquí nos concierne, el del tipo intermedio número seis (6), se le concedió un aumento de *$533* sobre lo que correspondía a ese tipo intermedio en la escala anterior.

La peticionaria estaba ubicada antes en el tipo salarial

intermedio seis (6) de la escala vigente entonces. *Su ubicación en ese sueldo intermedio había respondido a pasos que se le otorgaron mayormente por méritos y por ascenso.* Al establecerse la nueva escala, sin embargo, la peticionaria *no fue ubicada en el tipo salarial intermedio seis que tenía antes*, que conllevaba un aumento de *$533*, sino en el salario mínimo de la nueva escala. En consecuencia, el aumento de salario que recibió fue sólo de *$131* sobre su sueldo anterior, aunque los que antes sólo tenían el sueldo mínimo de la escala suplantada habrían de recibir un aumento de *$431.*

La peticionaria aduce, con razón, que su ubicación en el salario mínimo de la nueva escala constituye un *descenso* de facto. Examinemos las normas aplicables.

II

La peticionaria plantea que la A.Fᴀ.S.S., al implantar el nuevo plan de retribución que aquí nos concierne, realmente sólo enmendó el plan existente antes. Siendo ello así, dicha parte entiende que es de aplicación la Sec. 4.8(6) del Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal (en adelante Reglamento de Retribución Uniforme), Reglamento Núm. 3109 de 7 de junio de 1984, pág. 12. En mi criterio, tiene razón.

El Reglamento de Retribución Uniforme, aprobado el 7 de junio de 1984 por la Oficina Central de Administración de Personal, en virtud de la Sec. 760 de la Ley de Retribución Uniforme (en adelante Ley de Retribución), Ley Núm. 89 de 12 de julio de 1979 (3 L.P.R.A. sec. 760 *et seq.*), establece el criterio normativo que ha de regir la asignación de las clases de puestos de una agencia a las escalas de sueldos de ésta. En lo pertinente, la Sec. 4.8(6) aludida dispone:

La política pública enunciada en la Ley de Retribución Uni-

forme provee para un *tratamiento equitativo y justo en la fijación de salarios* y demás formas de retribución.

Para garantizar este objetivo se establecen las siguientes normas generales que regirán la administración de salarios en las siguientes transacciones de personal:

. . . . . . . . .

6. *Reasignaciones de Clases a Escalas de Sueldos Superiores*
Cuando se *enmiende* el Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior, *se concederá a los* empleados afectados un aumento en sueldo que será igual al incremento que reciba la clase a la fecha de efectividad de dicha acción. Los sueldos se ajustarán al tipo inmediato superior, cuando no coincidan con uno de los tipos retributivos de la escala correspondiente. Si el sueldo resultante excede del máximo de la escala, se procederá conforme a la disposición relativa a extensión de las escalas.

El Director, en el caso de la Administración Central y cada Autoridad Nominadora, en el caso de los Administradores Individuales, podrán autorizar otros mecanismos para ajustar los sueldos, en caso de limitación presupuestaria. (Énfasis suplido.)

Como puede observarse, la disposición reglamentaria aludida regula precisamente la situación que aquí nos concierne: una enmienda al plan de retribución de la agencia para reasignar una serie de clases de puestos a una escala de retribución superior. En el caso de autos, la A.Fa.S.S. implantó un nuevo plan de retribución. Hubo un aumento en cada tipo retributivo, desde el mínimo hasta el máximo dentro de cada escala. Cada escala de retribución, como un todo, experimentó un aumento salarial. Contrario a la conclusión de la mayoría del Tribunal, *el nuevo plan de retribución es idéntico al suplantado, excepto por los aumentos de sueldo.* Dicho plan no estaba basado en un nuevo plan de clasificación. No hubo reclasificación de los puestos ni reorganización de las clases de empleos. *El cambio real fue sólo de una escala salarial a otra escala de retribución superior.* Sustantivamente, el llamado "nuevo" plan no es otra cosa que una *enmienda* al plan de retribución anterior, por lo que es aplicable aquí la disposición reglamentaria aludida, que claramente ordena que el aumento que

reciba cualquier empleado cuando se asigna su clase a una escala salarial superior debe ser *del mismo valor monetario que el que reciben los demás.* Conforme a la Sec. 4.8(6) citada, en casos de "enmiendas" a los planes de retribución rige el criterio de *igualdad* en los aumentos salariales de todos los empleados.

Al examinar esta primera cuestión, es menester tener mucho cuidado con los juegos conceptuales. No se pueden hacer decisiones jurídicas importantes sólo a base del *nombre* que el administrador de una agencia pública le haya dado a lo que ha realizado. Hay que ir al fondo del asunto y examinar qué es lo que realmente ha acontecido. Sobre todo, no puede permitirse que el administrador evada las exigencias jurídicas de trato equitativo y justo para el empleado público a base de manipular el nombre que le dé a su acción.

La mayoría del Tribunal, *por puro fíat,* sin fundamento alguno, resuelve que el criterio de igualdad de la referida Sec. 4.8(6) del Reglamento de Retribución Uniforme sólo aplica a "enmiendas" de las escalas vigentes y que no rige en casos de supuestos "nuevos" planes de retribución que sólo modifican las cuantías salariales. ¿Cuál es el fundamento jurídico de tan insólita posición? ¿Cómo puede justificarse dar tratos tan distintos a situaciones que son esencialmente iguales? ¿Por qué el reglamento cobija una situación, y supuestamente no cobija la otra? Más aún, ¿puede un administrador evadir el requisito de igualdad aludido alegando que es un "nuevo plan" cada vez que decide enmendar el plan vigente?

En el caso de epígrafe, el nuevo plan salarial sólo constituía una enmienda al plan salarial anterior. No debe ser ocasión para emitir pautas que justifiquen las actuaciones de los administradores públicos que sólo proceden cuando se trata de verdaderos planes de reclasificación. Es menester separar una cosa de la otra. Por no hacerlo, por actuar de un modo que favorece irrazonablemente los intereses

burocráticos, la mayoría descarta el significado propio de la disposición reglamentaria referida y llega así a un resultado que no sólo carece de sentido jurídico alguno, sino que es injusto y discriminatorio.

## III

El otro planteamiento que hace la peticionaria amerita un cuidadoso examen, conforme al conocido criterio normativo de que la legislación reguladora del empleo público, especialmente aquella que reglamenta la retribución salarial de los empleados públicos, está revestida de un alto interés público. *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1 (1991).

El sistema de personal vigente en el país incorpora una clara política dirigida a brindar a los empleados del servicio público *un tratamiento equitativo y justo en la fijación de sus salarios*. A tales efectos, la Ley de Retribución, que fija la política pública general aplicable a todo el sistema de personal en cuanto a los principios de retribución salarial y de clasificación de empleados públicos, señala en su Exposición de Motivos que:

> La política retributiva del Gobierno del Estado Libre Asociado de Puerto Rico siempre ha sido proveer a sus empleados *un tratamiento equitativo en la fijación de sus sueldos*, de conformidad con el principio constitucional de igual paga por igual trabajo. Tanto los sueldos como todas las demás formas de remuneración deberán ser las más razonables y justas dentro de las posibilidades fiscales del Gobierno y en consonancia con el desarrollo de nuestra economía.
>
> .   .   .   .   .   .   .   .
>
> La Ley de Retribución ... [t]ambién persigue la aplicación de mecanismos que propendan y faciliten el reclutamiento y *retención de personal* mediante la concesión de incentivos adicionales con arreglo a las posibilidades fiscales del Gobierno del Estado Libre Asociado de Puerto Rico y de cada Municipio. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 89, *supra*, 1979 Leyes de Puerto Rico 225–226.

El referido principio de equidad retributiva está, además, claramente plasmado en el propio texto de la legislación referida. El Art. 2 de la Ley de Retribución, 3 L.P.R.A. sec. 760a, dispone que:

Se proveerá a los empleados del servicio público cubiertos por el Sistema de Personal creado mediante las secs. 1301 *et seq.* [del Título 3], un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución. A tales fines[,] la Oficina Central de Administración de Personal, en el caso de la Administración Central, y cada autoridad nominadora en el caso de los administradores individuales, adoptará planes de retribución conforme al reglamento que adopte la Oficina para instrumentar este Capítulo, a las normas generales sobre retribución que ésta emita y a las siguientes disposiciones:

(1) Establecerá y mantendrá al día un plan de retribución uniforme para los puestos de carrera y otro para los puestos de confianza.

(2) Al establecer y mantener los aludidos planes de retribucin deberá tomar en consideración diversos factores, tales como: niveles de responsabilidad y complejidad de las funciones, cualificaciones necesarias para el desempeño de las mismas; dificultades existentes en el reclutamiento y retención de personal en las diferentes clases de puestos; condiciones de trabajo; oportunidades de ascenso existentes dentro de los planes de clasificación; sueldos prevalecientes en diferentes sectores de la economía; aspectos relativos a costos de vida, y posibilidades fiscales. Véase, además, Sec. 4.6(2) del Reglamento de Retribución, *supra*, pág. 6.

En asuntos de personal, la A.Fₐ.S.S. es un "Administrador Individual" en virtud de su ley habilitadora, Ley Núm. 26 de 13 de noviembre de 1975 (24 L.P.R.A. sec. 337d). Respecto a la responsabilidad de los "administradores individuales", el Art. 5 de la Ley de Retribución, *supra*, 3 L.P.R.A. sec. 760d, dispone en lo pertinente que:

Cada administrador individual establecerá planes de retribución separados para sus empleados de carrera y de confianza conforme su capacidad fiscal y en armonía con sus respectivos planes de clasificación. En todo caso dichos planes estarán en armonía con las disposiciones de este Capítulo, con las normas de retribución que emita la Oficina Central de Administración de Personal. *Los planes de retribución deberán propiciar un*

*tratamiento justo y equitativo* en la fijación de los sueldos de los empleados y serán uniformes para cada administrador individual.

Los administradores individuales someterán al Director de Personal para estudio y aprobación final, previa consulta con el Director de la Oficina de Presupuesto y Gerencia, la asignación de las clases de puesto a las escalas de sueldo y cualquier cambio o reasignación subsiguiente. (Énfasis suplido.)

En adición al principio general de retribución justa y equitativa ya mencionado, la legislación que nos concierne aquí contiene disposiciones que son aún más directamente pertinentes a la controversia que tenemos ante nos en el caso de autos. Así, pues, en el inciso (c)(10) del Art. 6 de la Ley de Retribución se dispone que:

(10) Al adoptarse la nueva estructura salarial, los sueldos de los empleados se ajustarán de la siguiente forma:
*El que está bajo el mínimo irá al nuevo tipo mínimo. El salario de aquellos empleados que devenguen sueldos superiores al tipo mínimo de la escala por motivo de haber recibido aumentos de sueldo durante la vigencia de la anterior estructura, se ajustará de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada.* (Énfasis suplido.) 3 L.P.R.A. sec. 760e(c)(10).

Por otro lado, como Administrador Individual, la A.Fa.S.S. está obligada a cumplir las normas contenidas, tanto en la Ley de Retribución como en la Ley de Personal del Servicio Público de Puerto Rico (en adelante Ley de Personal), Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*). El inciso primero de la Sec. 2.1 de la Ley de Personal, *supra*, 3 L.P.R.A. sec. 1311, establece que el principio de mérito

... regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, *ascendido y retenido en su empleo en consideración al mérito y a la capacidad,* sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas. (Énfasis suplido.)

Más adelante, el Art. 14 de la Ley de Personal, *supra*, 3

L.P.R.A. sec. 1354(3), expresa que los tipos retributivos intermedios de cada escala

> ... se utilizarán para conceder aumentos en reconocimiento a la productividad y otros elementos de eficiencia de los empleados. (Énfasis suplido.)

La propia ley orgánica de la A.Fa.S.S. reconoce que la administración de personal de la agencia gubernamental aquí recurrida está fundamentada en el principio de mérito aludido. 24 L.P.R.A. sec. 337d.

Finalmente, el propio Reglamento de Retribución, en el inciso (3) de la Sec. 4.6, aprobado por la O.C.A.P. el 7 de junio de 1984 con el propósito de instrumentar los principios y las normas de retribución conforme a la política pública enunciada en la Ley de Retribución, dispone que:

> 3. Conforme la disponibilidad de recursos fiscales, las estructuras de sueldo deben ser lo suficientemente competitivas de manera que permita reclutar y *retener personal capacitado; deben proveer para el justo reconocimiento de la eficiencia y productividad individual de los empleados*; y de igual modo deberán estar estructuradas de forma tal que provean oportunidades de progreso en el servicio público. (Énfasis suplido.) Sec. 4.6(3), Art. 4, pág. 6.

Esta disposición reglamentaria aplica tanto al sistema de personal en general como a los administradores individuales, en particular al implantar sus respectivos planes de retribución. Art. 4 del Reglamento de Retribución, *supra*. Teniendo en cuenta los principios de *tratamiento salarial justo y equitativo, de reconocimiento al mérito del empleado, y de propiciar la retención de personal capacitado* contenidos en las disposiciones legislativas y reglamentarias referidas, pasemos a examinar ahora el planteamiento concreto de la peticionaria.

En el caso de autos, la peticionaria aduce que toda vez que los tipos intermedios o pasos dentro de las escalas salariales representan una acreencia del empleado público —porque son producto de los méritos acumulados en el

desempeño de sus funciones—(¹) dichos pasos son parte de un derecho adquirido por el empleado mientras subsista el tipo intermedio en la escala de retribución que corresponda al puesto del empleado. Aduce, además, que la actuación de la A.Fa.S.S. equivale a privar a la peticionaria de aquello que ésta ganó mediante sus esfuerzos y sus méritos, por lo que el plan de retribución en cuestión es contrario al principio de mérito. A diferencia de lo que entiende la mayoría del Tribunal, en mi criterio tiene razón la peticionaria.

Al establecer un plan de retribución, un administrador individual no viene obligado a establecer una escala tal y como ésta existía previamente. Tanto es así que un administrador podría reducir o extender los tipos retributivos intermedios. 3 L.P.R.A. sec. 760f. Sin embargo, ello no fue lo que ocurrió en el caso de autos. Aquí el administrador estableció un plan de retribución para el puesto que ocupa la peticionaria *idéntico en todo respecto* a la escala vigente previamente, con la única salvedad que la cuantía de retribución económica para los diferentes tipos en la escala aumentó. Es por ello que la peticionaria insiste en que toda vez que existe en la nueva escala salarial el mismo tipo intermedio de sueldo que ella tenía antes, al cual era acreedora por méritos, el administrador no tenía la facultad para privarla de dicho tipo intermedio al ubicarla en la nueva escala adoptada, como ocurrió aquí al colocarla en el tipo mínimo de dicha escala. A la luz de las normas retributivas antes discutidas, y en las circunstancias particulares de este caso, tal actuación gubernamental ciertamente

---

(¹) En *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610, 615 esc. 2 (1990), definimos el término "paso" como "un nivel o tipo de retribución dentro de una misma escala de salarios". El Art. 6(12) del Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal, Reglamento Núm. 3109 de 7 de junio de 1984, pág. 35, define "escala de retribución" como "[m]argen retributivo que provee un tipo mínimo, uno máximo y varios niveles intermedios a fin de retribuir el nivel de trabajo que envuelve determinada clase de puestos y de igual modo retribuir en forma adecuada y progresiva la cantidad y calidad de trabajo que rindan los empleados en determinada clase de puestos". Véase, además, Art. 11 de la Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979 (3 L.P.R.A. sec. 760j).

equivale a privarle a la peticionaria de aquello que ésta ganó mediante sus esfuerzos, sus méritos y años de servicio, en contravención de la clara política laboral de trato justo y equitativo, de reconocimiento al mérito del empleado, de reconocimiento a aumentos anteriores, y de retención de personal capacitado.

No puede negarse que el nuevo sueldo de la peticionaria es mayor que aquel que ésta devengaba bajo la escala anterior. Sin embargo, el hecho de haber experimentado un incremento salarial al implantar las nuevas escalas retributivas, por sí solo, no constituye un fundamento legítimo para despachar, como hace la mayoría, el reclamo de la peticionaria. Ésta tenía derecho no sólo a un aumento dispuesto por la Ley de Retribución sino, además, *a un aumento que no menoscabara los méritos acumulados por ella en el desempeño previo de su cargo público.* Corresponde a cada Administrador Individual la facultad de adoptar un esquema de retribución que responda a sus realidades funcionales y presupuestarias, *en tanto y en cuanto ello no resulte en menoscabo de derechos adquiridos.* Como bien señaló la Junta de apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) en su resolución en el caso de autos:

> Cuando una agencia implanta un nuevo plan de clasificación o retribución, como en el caso de autos, cumpliendo con su obligación como Administrador Individual, tiene amplia facultad para adoptar una norma de ajuste retributivo ajustado a sus realidades funcionales y presupuestarias *en tanto y en cuanto ello no resulte en un menoscabo de derechos adquiridos.* (Énfasis en el original suprimido y énfasis suplido.) Solicitud de *certiorari*, Apéndice II, *Exhibit* 6, pág. 76.

Del expediente que obra en autos, no surge con claridad cúales fueron las razones que tuvo la agencia para no reconocer en el nuevo plan los pasos por mérito previamente otorgados a sus empleados. Tampoco se ha argumentado ni existe prueba sobre los aspectos relativos a la capacidad fiscal y presupuestaria del Administrador Individual y

cómo ello incide concretamente sobre las nuevas retribuciones asignadas, sobre los pasos por mérito concedidos, y sobre los perjuicios alegados por la empleada aquí peticionaria. Por lo tanto, no existen fundamentos que permitan justificar el evidente menoscabo que ha sufrido la peticionaria en el reconocimiento salarial a los méritos de sus años de servicio en la agencia. No debe olvidarse que el derecho de propiedad que ampara a los empleados públicos se extiende no sólo al cargo que ocupan sino, además, *al sueldo y a los beneficios marginales. Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 731 (1982). El Estado, pues, no puede privarles de esos derechos adquiridos sin unas garantías procesales que cumplan con el debido proceso de ley. *Díaz Martínez v. Policía de P.R.*, 134 D.P.R. 144 (1993). Véase, además, *Board of Regents v. Roth*, 408 U.S. 564 (1972).

En circunstancias como la de autos, la Ley de Retribución no faculta a los Administradores Individuales a incidir adversamente sobre los pasos que le habían sido reconocidos al personal de carrera. Como vimos, el inciso (c)(10) del Art. 6 de la Ley de Retribución, *supra*, ordena expresamente ajustar los salarios de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada. 3 L.P.R.A. sec. 760e(c)(10). Con ello se protege adecuadamente el principio de mérito. No obstante, una mayoría del Tribunal resuelve de manera constreñida que basta con que el salario del empleado en cuestión no se reduzca y sea igual al nuevo salario mínimo para que queden "reconocidos" los logros previos. Con arreglo a esta interpretación, *no es ni siquiera necesario que se le den aumentos* al empleado referido, si los aumentos bajo la escala suplantada lo han llevado al mínimo de la nueva escala. Tampoco importa que cualquier aumento que se dé a dicho empleado sea *sustancialmente menor que el que reciben otros empleados de la agencia que no habían acumulado logros salariales previamente.*

Esta interpretación de la disposición legislativa en cuestión se hace por *puro fíat*. La mayoría no explica de modo satisfactorio por qué es que a un empleado se le puede dar un aumento *sustancialmente menor* que el que se le otorga a los demás empleados de la clase —*sobre la base de que dicho empleado ya antes había recibido aumentos por méritos*— sin que ello sea equivalente a *degradar los méritos ya logrados.* Como la ley claramente ordena que se *reconozcan* los aumentos ya recibidos, no parece razonable *penalizar* al que ya había logrado tales aumentos (como sucede si se le otorga un aumento sustancialmente menor al que reciben los demás en la nueva escala) sólo porque ya antes habían obtenido aumentos por mérito. *Tal actuación no constituye un reconocimiento de los logros pasados, sino un trato inferior por razón de los logros pasados, situación que me parece insólita, injusta y contraria al mandato legal.*

Al ubicarse a la peticionaria en el sueldo *mínimo* de la nueva escala, ¿se le *reconocían* así los aumentos recibidos durante sus 24 años de servicio competente en la agencia, como ordena la disposición citada antes de la Ley de Retribución? Nótese que a la peticionaria se le ubicó en el mismo sueldo donde habrían de ubicarse a los que sólo tenían el sueldo mínimo en la escala suplantada. ¿Cómo puede pensarse que si a un empleado de nuevo nombramiento —que devengaba el sueldo mínimo de la escala anterior— se le ubica en el nuevo sueldo mínimo, mientras que a un empleado que había logrado un sueldo mucho mayor por sus méritos se le ubica en el mismo sueldo mínimo nuevo, a este último se le "reconocieron" los aumentos anteriores? *Si al primero se le dio un aumento en la nueva escala de $431, ¿cómo es que al que había que reconocerle los logros pasados sólo se le aumenta $131?* Esta obvia e injustificada desproporcionalidad en los aumentos ¿no constituye un *descenso* de facto? ¿No convierte en una burla el mandato de reconocer los logros pasados? Más aún, la Ley de Retribución aludida dispone *como criterio*

*rector* que los planes de retribución van dirigidos a darle *"tratamiento justo y equitativo"* a los empleados públicos. ¿Cómo puede pensarse que la obvia e injustificada desproporción aludida antes satisface el criterio de tratamiento justo y equitativo?

Las varias leyes de retribución uniforme que se han aprobado en Puerto Rico durante las últimas décadas han tenido todas unos mismos propósitos. Se persigue proveer la retribución más justa y adecuada posible a los servidores públicos. En particular, se busca: (1) lograr paridad salarial entre los empleados públicos que ejercen por igual unas mismas funciones; (2) mejorar los sueldos de estos empleados; (3) hacer más atractivo el empleo público.

No cabe duda de que uno de los propósitos de estas leyes ha sido el de facilitar el reclutamiento de buenos empleados en un mercado competitivo. Sin embargo, la legislación referida también persigue el objetivo de *retener* los buenos empleados que ya tiene el Gobierno y *darle pleno reconocimiento a los méritos acumulados de éstos.* Por eso se ha dispuesto en la exposición de motivos que las escalas de retribución deben ser lo suficientemente amplias para que permitan el pago a los empleados *de acuerdo con su eficiencia y antigüedad.* Más aún, todo el entramado conceptual y valorativo del sistema de personal basado en el *mérito* va dirigido en gran medida a reconocer y compensar el trabajo bien realizado. Este propósito es al menos tan importante como los otros fines aludidos.

Es por lo anterior que se estableció el mencionado inciso (c)(10) del Art. 6 de la Ley de Retribución vigente. *Dicha disposición existe precisamente para proteger los logros pasados del empleado público.* No tiene sentido jurídico interpretarla para permitir que estos empleados no puedan recibir aumentos similares a los de los demás empleados, sólo porque ya antes recibieron otros aumentos por mérito como resuelve la mayoría. *Ello convertiría el esfuerzo meritorio pasado en la "justificación" para la falta de paridad*

*en el nuevo aumento,* lo que es inaudito y contrario precisamente a lo que se persigue lograr con la disposición referida de la Ley de Retribución.

En la exposición de motivos de varias de las leyes de retribución uniforme aludidas, que constituyen una serie integrada, se hace referencia a que *"la política de sueldos del Gobierno envuelve difíciles y complicadas decisiones".* Se explica que ello es así por la necesidad de *establecer un balance* entre las distintas necesidades sociales y los objetivos públicos. En efecto, entre lo que hay que armonizar está, por un lado, la búsqueda de paridad salarial entre puestos similares, y, por otro lado, la necesidad de proteger los logros de funcionarios de antigüedad que han realizado bien sus labores. La posición de la mayoría no reconoce la dificultad de establecer el balance aludido. Simplifica indebidamente el asunto al restarle valor al segundo de estos fundamentales propósitos de la legislación aludida.

En la implantación de las nuevas escalas retributivas que la A.Fᴀ.S.S. concretamente adoptó, ésta venía obligada a honrar los pasos por mérito reconocidos y concedidos a la peticionaria bajo la estructura retributiva suplantada. Ello no significa que en toda situación de nuevos planes de retribución, los empleados tienen un derecho adquirido sobre la ubicación en un tipo retributivo intermedio de una escala salarial particular. Sólo significa que en la implantación del nuevo plan de retribución adoptado concretamente por la A.Fᴀ.S.S. en el caso de autos, *que conservaba los mismos tipos retributivos intermedios de la escala anterior,* era menester reconocer los pasos que habían logrado los empleados públicos al amparo del principio del mérito. Sujeto a sus necesidades funcionales y presupuestarias, para proteger adecuadamente los reconocimientos que los empleados habían recibido ya por el mérito de sus servicios, la A.Fᴀ.S.S. tenía que incorporar los pasos por mérito recibidos por la peticionaria a la nueva estructura salarial, sobre todo en vista de que el nuevo plan de retribución conser-

vaba los tipos retributivos intermedios del plan suplantado.

Este Tribunal tiene la grave responsabilidad de ser justo con los que llevan años de servicio meritorio en el empleo público. No nos corresponde legitimizar posturas burocráticas que han de defraudar a empleados públicos que han laborado en sus cargos con lealtad y eficiencia por muchos años, y que no tienen en su haber material nada más que los méritos que se le han reconocido antes en su desempeño laboral.

Es por todo lo anterior que disiento del dictamen mayoritario.